IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


JOAN KEDRA,                          :      CIVIL ACTION
                                     :      NO. 15-5223
          Plaintiff,                 :
                                     :
     v.                              :
                                     :
RICHARD SCHROETER,                   :
                                     :
          Defendant.                 :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                      February 18, 2016


          This case arises from the tragic death of David Kedra
("Decedent"), who died as the result of injuries sustained in an
accidental shooting during a firearms safety training session in
September 2014. Plaintiff Joan Kedra ("Plaintiff"), as the
personal representative of the estate of Decedent (her son),
brings this action against Richard Schroeter ("Defendant"), who
taught the session and fired the fatal shot. Plaintiff brings
this case under 42 U.S.C. § 1983 and the Fourteenth Amendment,
alleging that Defendant violated Decedent's due process rights.
Defendant has moved to dismiss the case on the grounds that he

is entitled to qualified immunity. For the reasons that follow, the Court will grant the motion.

## I.   BACKGROUND[1]

Decedent, a 26-year-old Pennsylvania State Trooper, was ordered to attend a routine firearms safety training session on September 30, 2014. Compl. ¶¶ 6, 9-10. Defendant, a veteran police officer and trained firearms instructor, was the training instructor for the session. Id. ¶¶ 11-12. In the course of demonstrating a "trigger reset" to the trainees, Defendant failed to ensure that no bullet was in the handgun he was using. Id. ¶ 14. The gun was in fact loaded, and when Defendant pulled the trigger,[2] the gun discharged and the bullet struck Decedent in the abdomen. Id. ¶¶ 17-18. Decedent died several hours later as a result of his wounds. Id. ¶ 19.

On September 18, 2015, Plaintiff (the administratrix of Decedent's estate), filed the instant Complaint. It contains one count, brought under 42 U.S.C. § 1983 and the Fourteenth Amendment. Defendant filed a Motion to Dismiss, to which Plaintiff responded. Defendant also filed a Motion for Leave to

---

[1]      Counsel for Defendant stated in a hearing on the Motion to Dismiss that he disputes none of the factual allegations in the Complaint. The allegations are thus deemed admitted for the purposes of this motion.

[2]      Defendant ultimately pled guilty in state court to five counts of reckless endangerment on the basis of this conduct. Compl. ¶ 21.

File a Reply Brief, which the Court will grant. The Court held a hearing on the Motion to Dismiss, and the motion is now ripe for disposition.

## II.   LEGAL STANDARD

A party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When considering such a motion, the Court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." DeBenedictis v. Merrill Lynch & Co., 492 F.3d 209, 215 (3d Cir. 2007) (internal quotation marks omitted). To withstand a motion to dismiss, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. Although a plaintiff is entitled to all reasonable inferences from the facts alleged, a plaintiff's legal conclusions are not entitled to deference and the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

The pleadings must contain sufficient factual allegations so as to state a facially plausible claim for relief. See, e.g., Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009)). In deciding a Rule 12(b)(6) motion, the Court limits its inquiry to the facts alleged in the complaint and its attachments, matters of public record, and undisputedly authentic documents if the complainant's claims are based upon these documents. See Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

## III. DISCUSSION

Defendant argues that this case should be dismissed because he is entitled to qualified immunity.[3] Qualified immunity

---

[3]      Defendant also argues that Plaintiff, who styled the Complaint's caption as "JOAN KEDRA, in her own right, and as personal representative of the ESTATE OF DAVID KEDRA," cannot in fact sue in her own right because her own constitutional rights were not violated, and rather, can sue only as representative of the estate.

In response, Plaintiff correctly states that the complaint "seeks only those damages available to the personal

4

operates "to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." Saucier v. Katz, 533 U.S. 194, 206 (2001). The Supreme Court has established a two-part analysis for determining when qualified immunity is applicable: "(1) whether the official's conduct violated a constitutional or federal right; and (2) whether the right at issue was 'clearly established.'" Sharp v. Johnson, 669 F.3d 144, 159 (3d Cir. 2012) (quoting Saucier, 533 U.S. at 201).[4]

A.

To make out a "state-created danger" claim under the Fourteenth Amendment, as Plaintiff attempts to do here, a plaintiff must establish the following elements:

    (1)   the harm ultimately caused was foreseeable and fairly direct;

    (2)   a state actor acted with a degree of culpability that shocks the conscience;

    (3)   a relationship between the state and the

---

representative of the Kedra estate" and suggests that the caption includes the words "in her own right" only because that is the "conventional construction" for a caption in a case of this type. Pl.'s Resp. 2 n.1, ECF No. 8.

    Therefore, there is no dispute here; Plaintiff does not in fact seek to sue in her own right. She is thus granted leave to amend the caption accordingly.

[4]    The Court need not address these prongs sequentially. See Pearson v. Callahan, 555 U.S. 223, 236 (2009) ("The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.").

plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and

(4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

Bright v. Westmoreland County, 443 F.3d 276, 281 (3d Cir. 2006) (internal quotation marks omitted).

The parties agree that the issue in this case is whether Defendant's culpability shocks the conscience. As the Third Circuit has acknowledged, this question "has an elusive quality to it," "in part because the level of culpability required to shock the conscience will depend upon the extent to which a state actor is required to act under pressure." Sanford v. Stiles, 456 F.3d 298, 301 (3d Cir. 2006). Clarifying this matter in Sanford, the Third Circuit stated:

> The level of culpability required to shock the conscience increases as the time state actors have to deliberate decreases. In a hyperpressurized environment, an intent to cause harm is usually required. On the other hand, in cases where deliberation is possible and officials have the time to make unhurried judgments, deliberate indifference is sufficient.

Id. at 309 (internal quotation marks omitted). The Sanford court also acknowledged a third temporal possibility: "circumstances involving something less urgent than a 'split-second' decision

6

but more urgent than an 'unhurried judgment.'" 456 F.3d at 310.
In those circumstances, "the relevant question is whether the
officer consciously disregarded a great risk of harm." Id.

The parties agree that deliberate indifference is the
appropriate standard here, as Defendant had plenty of time to
act and no need to make hurried judgments. That is, in order for
Defendant's conduct to shock the conscience, he must have acted
with deliberate indifference. The meaning of "deliberate
indifference," however, is not so easily settled, as this case
presents a difficult issue concerning Defendant's state of mind.

It is undisputed that Defendant did not know there was
a bullet in the gun – or, at least, Defendant claims he did not
know there was a bullet in the gun, and counsel for Plaintiff
has affirmatively stated (during the hearing on the Motion to
Dismiss) that Plaintiff could not and would not plead that
Defendant knew there was a bullet in the gun. It is also
undisputed that Defendant knew the rules of firearms safety
training, including that he should have had a second individual
confirm that the gun contained no bullets, and that he failed to
follow that rule, among others.

But Plaintiff does not contend that Defendant was
consciously aware that he had failed to follow all of the safety
rules and proceeded anyway. Rather, Plaintiff's argument is
effectively that the risk was so obvious that it shocks the

conscience for him to fail to follow the rules, even if he did not realize in the moment that he was not following them.

Defendant, on the other hand, argues that the deliberate indifference standard requires subjective knowledge, such that he could not have acted with deliberate indifference unless he was consciously aware that he had not complied with all safety rules and thus that pulling the trigger carried a deadly risk.

Here, again, Sanford is relevant. In that case, the Third Circuit explicitly left open "the possibility that deliberate indifference might exist without actual knowledge of a risk of harm when the risk is so obvious that it should be known." Id. at 309. As the court said:

> We leave to another day the question whether actual knowledge is required to meet the culpability requirement in state-created danger cases. On the one hand, the Supreme Court has held that actual subjective knowledge of a risk is required for at least some Eighth Amendment claims. However, the Court has also held that the "obviousness" of a risk can be sufficient for liability in other cases. The Third Circuit has since stated that generally, a municipality may be held liable for a constitutional violation arising from a policy or custom if it demonstrates indifference to a known or obvious consequence. But we have not addressed the question as it relates to underlying state-created danger claims.

Id. at 309 n.13 (citations omitted). And that question remains unanswered today. See Benedict v. Sw. Pa. Human Servs., Inc., 98 F. Supp. 3d 809, 826 (W.D. Pa. 2015) (noting last year that

"[t]he Third Circuit has not yet ruled on whether officials may be liable for deliberate indifference in substantive due process cases when they <u>should have known</u> about a risk but did not, as opposed to when they <u>actually</u> knew of a risk and failed to act").

This case now presents the scenario anticipated but left unresolved by <u>Sanford</u>: a state actor proceeding despite a patently obvious risk that the actor should have recognized, but without actual knowledge that the risk existed. In the Third Circuit, it is an open question of law whether such a state actor acts with deliberate indifference. If the answer is that he <u>does</u>, then Defendant's culpability shocks the conscience and Plaintiff has sufficiently alleged that Defendant violated Decedent's constitutional rights. If the answer is that he does <u>not</u>, then Plaintiff has failed to allege a constitutional violation because Defendant's culpability does not shock the conscience.[5]

---

[5]     Plaintiff does argue that Defendant's plea of guilty to five counts of reckless endangerment in a state criminal court is an admission establishing that Defendant necessarily acted with conscious disregard – which, under <u>Sanford</u>, would also be sufficient to establish that his culpability shocks the conscience – because in Pennsylvania, "[t]he mens rea for the crime of recklessly endangering another person is a 'conscious disregard of a known risk of death or great bodily injury to another person.'" <u>Commonwealth v. Klein</u>, 795 A.2d 424, 428 (Pa. Super. Ct. 2002) (quoting <u>Commonwealth v. Hopkins</u>, 747 A.2d 910, 915-16 (Pa. Super. Ct. 2000)).

This Court could answer the underlying constitutional question about the contours of deliberate indifference, determining whether Defendant's conduct amounts to deliberate indifference as a matter of law, and thus whether Plaintiff has alleged a constitutional violation for the purposes of this qualified immunity analysis. But the Court need not – and will not – resolve that difficult constitutional issue, because it is evident that regardless of the answer, as discussed below, the right at issue is not clearly established by existing precedent. See Pearson v. Callahan, 555 U.S. 223, 241-42 (2009) (permitting district courts to avoid ruling on constitutional questions, due to the "general rule of constitutional avoidance," id. at 241,

---

This argument holds water only if non-mutual offensive collateral estoppel is extended here. Such estoppel, which has a "unique potential for unfairness," is not automatic and may be applied only at the discretion of the district court. Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc., 458 F.3d 244, 249 (3d Cir. 2006). At least four requirements must be proven: "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action." Id. (internal quotation marks omitted).

Plaintiff has not even attempted to carry her "burden of proving [estoppel's] applicability to the case at hand." Dici v. Commonwealth, 91 F.3d 542, 548 (3d Cir. 1996). Rather, she simply assumes that estoppel applies without engaging in any of the relevant legal analysis. Moreover, the Court will not hold that Defendant had a "full and fair opportunity to litigate" the question of his constitutional culpability on the basis of a guilty plea in a state criminal court. Seborowski v. Pittsburgh Press Co., 188 F.3d 163, 169 (3d Cir. 1999). Under these circumstances, therefore, the Court declines to apply estoppel, and Defendant's culpability thus remains unestablished.

where the case can be decided at the second prong of the qualified immunity analysis).[6]

B.

"A right is clearly established for qualified immunity purposes where its contours are 'sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Sharp, 669 F.3d at 159 (quoting Saucier, 533 U.S. at 202). A right is not clearly established unless "existing precedent [has] placed the statutory or constitutional question beyond debate." Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2083 (2011). In determining whether a right has been clearly established, "the court must define the right allegedly violated at the appropriate level of specificity." Sharp, 669 F.3d at 159. That is, the court must not "define clearly established law at a high level of generality." al-Kidd, 131 S. Ct. at 2084.[7] The critical question here is "whether the violative nature of particular conduct is clearly established." Mullenix v. Luna, 136 S. Ct. 305, 308 (2015) (internal quotation marks omitted).

---

[6]     Before Pearson, the Supreme Court required lower courts to address the two prongs of the qualified immunity analysis in sequence – determining first whether a constitutional violation had occurred, then whether the right at issue was clearly established. See Pearson, 555 U.S. at 232 (discussing Saucier, 533 U.S. 194, in which the two-step sequential analysis was mandated).

[7]     An example of a right defined at too high a level of generality is "that an unreasonable search or seizure violates the Fourth Amendment." al-Kidd, 131 S. Ct. at 2084.

The inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." Id. (quoting Brosseau v. Haugen, 543 U.S. 194, 198 (2004) (per curiam)).

As discussed above, neither the Supreme Court nor the Third Circuit has conclusively stated that the type of conduct at issue here amounts to a violation of constitutional rights. In fact, the Third Circuit has explicitly said that it has not yet resolved that question. Sanford, 456 F.3d at 309. Moreover, there is a circuit split on this issue, with the Seventh, Ninth, and Tenth Circuits holding that the obviousness of a risk is sufficient to establish deliberate indifference in state-created danger cases, while the Sixth Circuit requires subjective knowledge. Id. at 309 n.13 (collecting cases).

It is possible that Plaintiff's desired rule will eventually win the day and the Third Circuit or Supreme Court will at some point hold that in state-created danger cases, subjective knowledge of a risk is not required to prove deliberate indifference where the state actor should have known of the risk. If so, then future state actors in Defendant's situation would be "on notice their conduct is unlawful" and unable to claim qualified immunity. Saucier, 533 U.S. at 206. But as the law stands, "existing precedent [has not] placed the statutory or constitutional question beyond debate." al-Kidd, 131 S. Ct. at 2083. Under these circumstances, the violative

12

nature of Defendant's alleged conduct has not been clearly established, and so Defendant is necessarily entitled to qualified immunity.

**IV.  CONCLUSION**

For the foregoing reasons, the Court will grant Defendant's Motion to Dismiss. An appropriate order follows.